1  Shayna H. Balch, SBN 024852
   Alanna R. Brook, SBN 028018
2  FISHER & PHILLIPS LLP
   3200 N. Central Avenue, Suite 1550
3  Phoenix, Arizona 85012-2487
   Telephone: (602) 281-3400
4  Fax: (602) 281-3401
   sbalch@fisherphillips.com
5  abrook@fisherphillips.com
   Attorneys for Defendant
6  WM Corporate Services, Inc.

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| Russell A. Smith, | No. 19-CV-01579-PHX-SPL |
|---|---|
| Plaintiff, | **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| WM Corporate Services, Inc., | |
| Defendant. | **[FED. R. CIV. P. 56]** |
| | (Oral Argument Requested) |

///

///

///

///

///

FP 40222704.1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff's Complaint contains three causes of action for: (1) disability discrimination and failure to accommodate under the ADA; (2) retaliation under the ADA; (3) and age discrimination under the ADEA. WM is entitled to summary judgment on all counts.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Initial Employment with WM And His Working Hours.

Plaintiff was identified as a potential candidate for employment in January 2014 and was subsequently interviewed, in person, by both Senior Sales Manager Bradley Cea and Senior Director of Corporate Sales and Optimization Dave Swedler. DSOF¶1. Following Mr. Cea and Mr. Swedler's interview of Plaintiff, they made the decision to hire him. *Id.* An offer of employment to work as an Inside Sales Manager in WM's Phoenix office was extended to Plaintiff in February 2014. DSOF¶3.

Plaintiff held the position of Inside Sales Manager from the commencement of his employment in 2014 through his termination from employment in September of 2015. DSOF¶¶3-4. As an Inside Sales Manager, Plaintiff was responsible for "[p]articipat[ing] in training and coaching (sic) the Inside Sales staff." DSOF¶4. From February 2014 through July/August 2015, Plaintiff oversaw WM's eBusiness team which consisted of approximately 12 to 15 employees. DSOF¶5. This team had hours of operation from 5:00 a.m. to 5:00 p.m. *Id.* Plaintiff later oversaw WM's SnapShot team from July/August 2015 through his termination. DSOF¶25.

Early in his career with WM, Plaintiff made clear that he preferred to work earlier hours in order to accommodate his moonlighting as a personal trainer/fitness instructor. DSOF¶6. Accordingly, Plaintiff frequently arrived to work before the eBusiness team opened and before he had employees to supervise. *Id.* Plaintiff testified that he typically arrived to work at 4:30 a.m. and left work around 1:00 p.m. or 1:30 p.m. *Id.* At times, Plaintiff asked to start work as early as 2:45 a.m., in an effort to try and leave even earlier in the day. DSOF¶7.

In or around March/April 2015, WM management received complaints from members

of Plaintiff's team regarding the lack of adequate coaching and oversight in the afternoon. DSOF¶8. As a result, Plaintiff's supervisor asked him to work a rotating schedule (some afternoons) in order to provide better coverage for his employees who worked later hours. *Id.* On April 17, 2015, in response to this request, Plaintiff offered to modify his working hours to 7 a.m. to 3:30 p.m. DSOF¶9.

However, after this schedule had been in effect for a little over a month, Plaintiff asked to revert to an earlier schedule and made a request for an accommodation. DSOF¶10. Specifically, Plaintiff asked to commence work starting at 4:30 a.m. so he could leave by 1:30 p.m. DSOF¶¶10-12. In response to Plaintiff's request for an accommodation, WM commenced the interactive process (*see* section III(c)(2), *infra*), gathered additional information about Plaintiff's needs, received information from his health care provider that he wanted a "[c]onsistent work schedule starting time at 6 a.m.," and granted Plaintiff's request. DSOF¶¶13-25. However, in light of the eBusiness team coverage issues that had been previously raised with Plaintiff, WM asked him to move to the SnapShot team, which had shorter hours of operation of 5:00 a.m. to 2:30 p.m. DSOF¶21. In light of these shorter hours of operation, WM was able to grant Plaintiff's requested accommodation of a "[c]onsistent work schedule starting time at 6 a.m." DSOF¶21-23.

### B. Plaintiff's Termination For Cause After Engaging In Road Rage Towards A Subordinate Employee.

Approximately two and a half months following Plaintiff's granted accommodation, Plaintiff was terminated for cause following a history of misconduct and hostile behavior towards other WM employees. DSOF¶26. This misconduct is well-documented in disciplinary notices, a performance review issued to Plaintiff, and further supported by Mr. Cea and Mr. Swedler's deposition testimony. DSOF¶¶26-36. It then culminated in a road rage incident between Plaintiff and a female subordinate WM employee, Debbi James, on September 29, 2015. DSOF¶32.

According to Ms. James, the incident began with Plaintiff cutting her off on the freeway off-ramp near work. DSOF¶33. Plaintiff then followed her into the WM parking lot, parked behind her vehicle with his car's engine running (blocking her in) and drove along-side her as she

hurried towards the WM entrance. *Id.* Once Ms. James arrived at the WM entrance, Plaintiff sped up in his car to the curb near the entrance, hurried out of his own car to the WM entrance behind her, and he then reached out to grab the entrance door that she was trying to force shut. *Id.* Ms. James reported that she felt Plaintiff's "intention was to get [her] or get into the building," at which point, Plaintiff pulled out a WM badge, unlocked the door, and followed her into the building. *Id.* Ms. James was fearful of Plaintiff's intentions and as she rushed towards other WM employees and her supervisor Plaintiff rushed past her to approach WM management. *Id.* All of this occurred at approximately 5:00 a.m. when it was still dark out. *Id.*

In a written statement prepared by Plaintiff, he admitted to encountering Ms. James on the highway off-ramp and turning in front of her vehicle. DSOF¶34. Plaintiff further admitted to "follow[ing] [Ms. James'] vehicle into the WM parking lot," "enter[ing] the building behind her," and speaking with her supervisor, Chuck Pehowic. *Id.* Notably, the building Plaintiff entered was a building that he did not work in (WM had two buildings located close to one another–Plaintiff worked in one and Ms. James worked in the other). *Id.*

Immediately following this incident, Mr. Pehowic called Plaintiff's supervisor, Mr. Cea, and provided an overview of what had occurred. DSOF¶35. Mr. Pehowic also informed Mr. Cea that he had requested written statements from Plaintiff and Ms. James, which were forwarded to Mr. Cea. *Id.* Mr. Cea conferred with his own supervisor, Dave Swedler and Human Resources Manager, Corina Hernandez about what had occurred. *Id.* After learning about the road range incident, Mr. Swedler decided to terminate Plaintiff's employment. DSOF¶36. Plaintiff was terminated for cause the very next day on September 30, 2015. *Id.*

## III.   LEGAL ARGUMENT

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). To defeat WM's motion, Plaintiff "may not rest upon the mere allegations or denials of [his] pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Id.* WM's motion must be granted if the evidence presented by Plaintiff "is merely colorable or is not significantly

4

probative." *Id.* at 249 (internal citations omitted).

### A. Plaintiff's Claims Allegedly Arising from His First EEOC Charge Are Time Barred.

A plaintiff asserting an ADEA or ADA claim must file an action within ninety days of receiving his notice of right to sue from the EEOC. 42 U.S.C. § 2000e-5(f)(1). "This ninety-day time period is a statute of limitations." *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 383 (9th Cir. 1997). Here, Plaintiff filed his first EEOC Charge on or around May 19, 2015. DSOF¶37. In his charge Plaintiff claimed that he had been subjected to disability discrimination and retaliation. *Id.* The EEOC required no response from WM and on August 6, 2015, the EEOC unilaterally issued a dismissal notice and right to sue.[1] DSOF¶38. Plaintiff did not file his current lawsuit until November 21, 2018 - **more than three years after the notice was issued**. DSOF¶¶38-40. Plaintiff's ADA claims allegedly based on his first EEOC charge are, therefore, time-barred.

### B. All Alleged Discrete Discriminatory Acts that Occurred Before April 22, 2015 Are Also Time-Barred.

In order to pursue a claim under either the ADA or ADEA, a party must first file an administrative charge with the EEOC before filing suit. This duty to file an administrative charge means that a charging party must file a charge with the EEOC or applicable state agency for each discrete discriminatory act within 300 days or lose the ability to recover for it. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). A discrete act includes "[e]ach incident of discrimination and each retaliatory adverse employment decision [that] constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114.

Here, Plaintiff filed his second charge of discrimination on February 16, 2016 (Charge No. 540-2016-01121) alleging disability discrimination, age discrimination, and retaliation. Based on the filing date of his second charge, any conduct supporting his claims of discrimination must have occurred on or after **April 22, 2015** (300 days before February 16, 2016). However, many of the alleged discrete discriminatory acts in Plaintiff's Complaint predate April 22, 2015. For

---

[1] Plaintiff conceded that he received the notice of right to sue on or about August 6, 2015. DSOF¶39. On September 5, 2015 Plaintiff appealed the notice of dismissal that he received from the EEOC. *Id.* The EEOC affirmed its dismissal decision on September 23, 2015 and reminded Plaintiff that he had 90 days from the original notice of right to sue to file suit. *Id.*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

example, Plaintiff alleges that he was "discipline[ed] inconsistent with Company policy" on August 26, 2014 and March 27, 2015 via disciplinary writeups. DSOF¶42. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114 (workplace counseling is a discrete act). Plaintiff further alleges that his work schedule was changed when he was asked to "work a flexible work schedule" on or before April 17, 2015. DSOF¶42. *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 239 (2d Cir. 2007) (changes in work shifts are discrete acts).[2] Since each of these alleged workplace actions are discrete acts, Plaintiff was required to timely raise them in an EEOC charge and file a lawsuit within 90 days of his receipt of a right to sue notice. Since Plaintiff did not file his second EEOC charge until more than 300 days later on February 16, 2016, these alleged discrete acts are time-barred.

### C. Plaintiff's ADEA and ADA Claims Fail To State A Claim Upon Which Relief May Be Granted.

#### 1. Plaintiff's Disability Discrimination Claim Fails.

In order to establish a viable claim for disability discrimination, a plaintiff must prove that "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003); *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1353 (9th Cir.1996). The plaintiff bears the burden of proving "that the desire to retaliate was the but-for cause of the challenged employment action." *University of Tex. Southwestern Medical Center v. Nassar,* 570 U.S. 338, 352, 133 S. Ct. 2517, 2528 (2013); *Murray v. Mayo Clinic,* 934 F.3d 1101, 1107 (9th Cir. 2019). Here, Plaintiff claims that he suffers from obstructive sleep apnea and contends that two employment actions give rise to his disability discrimination claim: (1) his move from working as the Inside Sales Manager overseeing the eBusiness team to working as an Inside Sales Manager overseeing the SnapShot team; and (2) his termination from employment. DSOF¶43. Both of these claims fail as a matter of law.

---

[2] Plaintiff implies in his Complaint that Defendant failed to accommodate his alleged disability prior to April 22, 2015. Even assuming, *arguendo,* the truth of Plaintiff's allegation, any alleged failure to provide accommodations is also a discrete action and time-barred. *Teague v. NW. Mem'l Hosp.*, 492 Fed.App. 680, 684 (7th Cir. 2012); *Proctor v. United Parcel Serv.,* 502 F.3d 1200, 1210 (10th Cir. 2007); *Dick v. Dickson State Univ.,* 826 F.3d 1054, 1059 (8th Cir. 2016).

FP 40222704.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

To begin, Plaintiff cannot establish that he was a qualified individual able to perform the essential functions of his job. "[E]ngaging in face-to-face interaction with …subordinates" is an essential function of a supervisory role. *Hill v. City of Phoenix*, 162 F. Supp. 3d 918, 925 (D. Ariz. 2016), *order clarified*, CV-13-02315-PHX-DGC, 2016 WL 3457895 (D. Ariz. June 24, 2016). As Judge Campbell recently recognized, "'a majority of circuits have endorsed the proposition that in those jobs where performance requires attendance at the job, irregular attendance compromises essential job functions.'" *Cooper v. Dignity Health*, 438 F. Supp. 3d 1002, 1011 (D. Ariz. 2020) (quoting *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1238 (9th Cir. 2012) ("on-site regular attendance is an essential job function"); *see also Ogden v. Pub. Util. Dist. No 2 of Grant County*, 722 Fed. Appx. 707, 709 (9th Cir. 2018) ("being present at work to supervise" is "an essential function of a supervisor's job").

Here, Plaintiff was not qualified to perform the essential functions of his position as Inside Sales Manager over the eBusiness team. His lack of qualification was based on his inability to provide adequate supervision and coverage for his team, which worked between the hours of 5 a.m. and 5 p.m. DSOF¶¶6-10. Plaintiff was further unqualified based on his repeated hostile interactions with coworkers. DSOF¶¶26-36. These hostile interactions ultimately culminated in Plaintiff bringing a road rage incident (that began off company property) into the workplace when Plaintiff followed a subordinate employee in her vehicle, followed her into the WM parking lot, stopped behind her parked vehicle (blocking her in), followed her in his vehicle as she hurried into her building, parked by the building entrance, followed her as she walked into her building—a separate building from where he worked— and tried to shut the door, and ultimately used his own access card to gain entry to her building and follow her inside. DSOF¶¶32-35. Such threatening and intimidating behavior by a supervisory level employee renders him unqualified as a matter of law. *See Weaving v. City of Hillsboro*, 763 F.3d 1106, 1114 (9th Cir.2014) (rejecting a holding that would force employers to choose between ADA liability and "a hostile workplace environment"); *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 31 A.D. Cases 1556 (9th Cir. 2015); *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 864, 868 (7th Cir. 2005).

FP 40222704.1

Next, Plaintiff's move from the eBusiness team to the SnapShot team was not an adverse employment action.[3] "[A]n adverse employment action is one that materially affect[s] the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). Here, as Plaintiff testified at deposition, after he moved teams, he retained the identical job title of Inside Sales Manager, kept his same base pay, kept his same commission plan, continued working at the same WM location, and did not have any change in any authority or responsibility. DSOF¶24. The only change to Plaintiff's position was an alteration to his hours–which was done at *Plaintiff's request*. DSOF¶¶21-23.

Finally, Plaintiff cannot establish but-for causation as to either his move to the SnapShot team or his termination from employment. *University of Tex. Southwestern Medical Center v. Nassar,* 570 U.S. 338, 352, 133 S. Ct. 2517, 2528 (2013); *Murray* at 1107. As to Plaintiff's move to the SnapShot team, even assuming *arguendo* that it constituted an adverse employment action, Plaintiff cannot establish he was involuntarily moved "but-for" his disability. Indeed, when asked what facts he had in support of his claim that he was moved **because of** his disability, Plaintiff's only response was that "management informed him that they would only adjust his schedule if he transferred to the SnapShot team." DSOF¶44. This is not evidence of "but-for" causation based on a disability. Indeed, Plaintiff has offered no evidence in support of discriminatory motives behind his move to the SnapShot team. Instead, the undisputed facts show that Plaintiff kept the identical position, but merely moved teams after *Plaintiff requested* an accommodation to work a "[c]onsistent work schedule starting time at 6 a.m." DSOF¶¶21-25. As to Plaintiff's termination, Plaintiff was terminated from WM after he engaged in road rage directed towards a subordinate employee. Plaintiff has offered no facts to contest this legitimate, non-discriminatory reason for his termination from employment. Indeed, at deposition, when asked what facts he had in support of his assertion that he was terminated because of his disability, Plaintiff could offer nothing more than his subjective beliefs:

---

[3] Moreover, as set forth more fully in section III(c)(2), *infra*, the move to SnapShot was initiated at Plaintiff's request to work a "[c]onsistent work schedule starting time at 6 a.m."

8

FP 40222704.1

> A. **My belief** is that the transfer to SnapShot was all preplanned with the intent of getting rid of that team. And it made it quite easy to get rid of me if they were dissolving that -- the nine or ten people that were on that team and integrating them into other teams. It was a very easy way to get rid of me.
> Q. **You say that that is your belief, correct?**
> A. **That -- that is correct.**
> Q. Do you have any facts in support of that?
> A. Well, other than the fact that I was mandated to switch teams and then two months later that team was dissolved, no. DSOF¶45 (emphasis added).

Moreover, while Plaintiff has summarily claimed that the SnapShot team was "dissolved," he has offered no factual support for this assertion.[4] On the other hand, Defendant has offered evidence that the SnapShot team was not dissolved and, instead, has steadily grown over the years from approximately 10 employees to well over 100. DSOF¶47. It is well-established that speculation and unsupported allegations like the ones being advanced by Plaintiff are insufficient to overcome summary judgment. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 922 (9th Cir. 2001). Since Plaintiff has been unable to offer any facts to contradict WM's valid decision to terminate him for cause, he cannot establish the requisite "but-for" causation needed for his disability discrimination claim.

### 2. Plaintiff's Failure to Engage in The Interactive Process/Failure to Accommodate Claim Fails.

"The ADA treats the failure to provide a reasonable accommodation as an act of discrimination, if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Trans. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018), cert. denied sub nom. *Snapp v. Burlington N. Santa Fe Ry. Co.*, 139 S. Ct. 817, 202 L. Ed. 2d 577 (2019) (citing 42 U.S.C. § 12112(b)(5)(A)). For the reasons set forth in section III(c)(2), *supra,* Plaintiff cannot establish that he was a qualified individual. But assuming, *arguendo*, that Plaintiff is able to establish he is a qualified individual with a disability, his failure to accommodate/failure to engage in the interactive process claim fails.

---

[4] At deposition, Plaintiff testified that his subjective belief that the SnapShot team was disbanded stemmed from his belief that he was laid off as part of a reduction in force. DSOF¶46. While Plaintiff conceded that he was never actually informed that he was being laid off as part of a reduction in force, he contends that he *believed* he had been laid off because he was offered a severance package and he doesn't *believe* that severance packages are offered to employees who have been terminated for cause. *Id.*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

To begin, Plaintiff cannot establish that he needed an accommodation to perform the essential functions of his job. Although Plaintiff claims to have obstructive sleep apnea, his own health care provider explained in his response to WM's Request for Limited Medical Information that Plaintiff was "*able to work … without restrictions, limitations or accommodations*." DSOF¶17. His health care provider further clarified that Plaintiff's impairments did not limit his ability to perform the essential functions of his job without an accommodation. DSOF¶18. But as set forth below, despite Plaintiff's lack of a need for an accommodation, Defendant nevertheless engaged in the interactive process and granted Plaintiff's accommodation request.

In order to trigger the employer's duty to engage in the ADA "interactive process," an employee must first notify its employer of the need for an accommodation. *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188-89 (9th Cir. 2001).[5] An employee "must make clear that the employee wants assistance for his or her disability." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999). That is, "the employer must know of both the disability and the employee's desire for accommodations for that disability." *Id.* "Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process." *Barnett,* 228 F.3d at 1115.

Here, Plaintiff first requested an accommodation from WM on May 20, 2015 via an email to Human Resources Manager Corina Hernandez titled "Sleep Apnea Request for Reasonable Accommodation." DSOF¶¶10-11. The request for accommodation was to switch from his previously requested schedule of 7:00 a.m. to 3:30 p.m. to a schedule of 4:30 a.m. to 1:30 p.m. DSOF¶10-12. Accordingly, WM had no duty to engage in the interactive process (or provide an accommodation) prior to May 20, 2015. *Brown*, 246 F.3d at 1188-89.

Once triggered, the ADA requires employers to engage in a good-faith interactive process with employees to identify and implement appropriate reasonable accommodations. 29 C.F.R. § 1630.2(o)(3); *Humphrey v. Mem'l Hosps. Ass'n,* 239 F.3d 1128, 1137 (9th Cir. 2001) (internal citations

---

[5] The only recognized exception to this rule is when "an employee is unable to make such a request" and "the company knows of the existence of the employee's disability." *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1115 (9th Cir. 2000) (en banc), vacated on other grounds by 535 U.S. 391 (2002). Here, neither prong has been met prior to May 20, 2015.

10

1  and quotations omitted) ("Once an employer becomes aware of the need for accommodation,
2  that employer has a mandatory obligation under the ADA to engage in an interactive process with
3  the employee to identify and implement appropriate reasonable accommodations."). As part of
4  this interactive process, employers are expected to analyze job functions, establish essential and
5  nonessential job functions, and cooperate with the employee to determine the types of
6  accommodation that would be most effective. *Barnett*, 228 F.3d at 1115.

7  Here, once Plaintiff requested an accommodation, WM promptly commenced the
8  interactive process. Upon receipt of the May 20, 2015 email, Ms. Hernandez met with Plaintiff to
9  discuss his request and provided him with a questionnaire designed to gather more information
10 about his requested accommodation. DSOF¶13. Ms. Hernandez asked Plaintiff to have his health
11 care provider complete and return the questionnaire. *Id.* Ms. Hernandez also followed up with
12 Plaintiff by sending him an email dated May 26, 2015 stating "[p]er our meeting last week, we
13 agreed to your proposed schedule from 7a.m. to 4 p.m…. This schedule will be in place until we
14 complete the review of your schedule accommodation request." DSOF¶14. By sending the
15 questionnaire and again following up with Plaintiff regarding his accommodation request, WM
16 satisfied its duty to commence the interactive process with Plaintiff.[6]

17 Unfortunately, however, despite WM's request that Plaintiff provide it with additional
18 information to assess his request, Plaintiff didn't return the completed questionnaire for more
19 than *five weeks*.[7] DSOF¶16. The interactive process is a two-way road and requires "direct
20 communication between the employer and employee to explore in good faith the possible
21 accommodations." *U.S. EEOC v. UPS Supply Chain Sols*, 620 F.3d 1103, 1110 (9th Cir. 2010);
22 *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2004). Where, as here, an employee
23 improperly sits on his hands and doesn't provide needed information to his employer, it is the

---

[6] As Plaintiff testified at deposition, he understood this email from Ms. Hernandez to mean that she "was reviewing [Plaintiff's] accommodation request regarding [his] schedule, and that she would be getting back to [him] shortly." DSOF¶15.

[7] The completed Request for Limited Medical Information was signed by Plaintiff's health care provider on July 1, 2015. DSOF¶16. At deposition, Plaintiff was unable to recall the specific date he returned the completed questionnaire to WM, but at deposition he conceded it would have been after July 1, 2015. *Id.*

FP 40222704.1

*employee* who is responsible for the breakdown of the interactive process and the employer is not liable for a failure to accommodate. *Phillips v. Victor Cmty Support Servs., Inc.*, 692 Fed. Appx. 920, 921 (9th Cir. 2017); *Zivkovic v. S. California Edison Co.,* 302 F.3d 1080, 1089 (9th Cir. 2002)("Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process"); *Hill v. City of Phoenix*, 162 F. Supp. 3d 918, 928 (D. Ariz. 2016), *order clarified*, CV-13-02315-PHX-DGC, 2016 WL 3457895 (D. Ariz. June 24, 2016).

Despite the foregoing breakdown caused by Plaintiff, once Plaintiff did return the requested questionnaire, Ms. Hernandez contacted Plaintiff to schedule an interactive process meeting with him to review the information and discuss potential accommodations. DSOF¶20. This meeting occurred between Plaintiff, Ms. Hernandez and Plaintiff's supervisor, Brad Cea, on July 13, 2015. *Id.* In the completed questionnaire, Plaintiff's health care provider indicated that Plaintiff needed a "[c]onsistent work schedule starting time at 6 a.m." DSOF¶19. During the meeting with Plaintiff, this requested 6:00 a.m. start time was discussed and Plaintiff was told that his accommodation request had been approved. DSOF¶¶20-22. Following the meeting, Ms. Hernandez sent Plaintiff a letter confirming that his requested accommodation with a consistent start time of 6:00 a.m. had been granted. DSOF¶23. It is well-established that precisely this type of interactive dialogue between an employer and employee is sufficient to satisfy an employer's duty to engage in the interactive process with an employee. *Cooper v. Dignity Health*, 438 F. Supp. 3d 1002, 1014 (D. Ariz. 2020). Finally, since WM granted Plaintiff precisely the accommodation he requested – a "[c]onsistent work schedule starting time at 6 a.m." - Plaintiff's failure to accommodate claim similarly fails. *Lewis v. Clark County Sch. Dist.,* 799 Fed. Appx. 518, 519 (9th Cir. 2020) (defendant "did not fail to accommodate [plaintiff] because it provided the only accommodation she requested"); *Mitchell v. Am. Airlines, Inc.,* CV17-2470-PHX-DGC, 2018 WL 4931718, at *5 (D. Ariz. Oct. 11, 2018).

### 3. Plaintiff's ADA Retaliation Claim Fails.

With respect to his claim for retaliation, Plaintiff must demonstrate: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection

between the protected activity and the adverse employment action. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *Poland v. Chertoff,* 494 F.3d 1174, 1180 n.1 (9th Cir. 2007). The plaintiff bears the burden of proving "that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. SW Med. Ctr. v. Nassar,* 570 U.S. 338, 352, 133 S. Ct. 2517, 2528 (2013). Here, Plaintiff's retaliation claim is based on the following: (1) he was disciplined "inconsistent with Company policy"; (2) his "work schedule" was changed, (3) he was moved to a "less prestigious, tenuous position" and (4) he was terminated from employment. DSOF¶48.

As set forth more fully in sections III(A) and (B), *supra*, Plaintiff's claims that he was disciplined "inconsistent with company policy" and that his "work schedule" was changed are time-barred acts. Thus, they cannot be used to form the basis of Plaintiff's retaliation claim.

Next, Plaintiff's allegation that he was moved to a "less prestigious; tenuous position" does not support a retaliation claim because it was not an adverse employment action. An adverse employment action in the context of a retaliation claim is an act that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "Not everything that makes an employee unhappy" is an adverse employment action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996); *see also Brooks*, 229 F.3d at 928 ("not every employment decision amounts to an adverse employment action"). Here, Plaintiff's move from the eBusiness team to the SnapShot team did not constitute an adverse employment action. First, the move resulted from *Plaintiff's own request* to change his working hours, which could only be accommodated by moving him to a different team. DSOF¶¶10-12, 21-23. Second, his move from one team of employees to another would not have dissuaded a reasonable worker. He maintained the identical job title of Inside Sales Manager, kept his same base pay, kept his same commission plan, continued working in the same building, and did not have any change in any authority or responsibility. DSOF¶24. Plaintiff similarly cannot establish that his move from the eBusiness team to the SnapShot team was due to any to retaliatory animus. Plaintiff has offered no facts to establish retaliatory animus on the part of

13

WM other than his own unsubstantiated and speculative beliefs, which are insufficient to overcome summary judgment. *Arpin,* 261 F.3d at 922. Rather, Plaintiff's move occurred because <u>Plaintiff asked for</u> a "[c]onsistent work schedule starting time at 6 a.m.," which WM granted by moving him to the SnapShot team. DSOF¶¶10-12, 21-23.

Plaintiff has also failed to offer any factual support for his subjective belief that he was terminated due to retaliatory animus. At deposition, when Plaintiff was asked what facts he had in support of his position that his employment was terminated due to retaliatory animus, Plaintiff incredibly testified that there were "too many coincidences" and "I guess if it walks like a duck and it quacks like a duck, it's probably a duck." DSOF¶49. It is well-established that this type of speculation and conjecture is insufficient to overcome summary judgment, and certainly does not support the requisite "but-for" causation required for a retaliation claim. *Arpin,* 261 F.3d at 922. Instead, Plaintiff was terminated for entirely legitimate and non-retaliatory reasons after he engaged in a road rage incident directed towards a subordinate employee. DSOF¶¶26-36. Simply put, Plaintiff's retaliation claims fail because he cannot prove that retaliatory animus was the but-for cause of any alleged adverse action.

### 4. Plaintiff's ADEA Claim Fails.

In order to establish a *prima facie* case of age discrimination under *McDonnell-Douglas* Plaintiff must demonstrate that: (1) he was a member of a protected class; (2) he was qualified for the position and/or meeting WM's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) WM treated similarly-situated individuals outside of his protected class more favorably or that Plaintiff was replaced by someone outside of his protected class. *See Burdine,* 450 U.S. at 254; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Minadeo,* 398 F.3d at 764. A plaintiff must prove but-for causation as part of his ADEA claim. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 180 (2009). Here, Plaintiff is over 40 years-old (date of birth of 04/17/59) and he has claimed that he was replaced on the eBusiness team and then terminated due to his age.

As discussed above in section II(A), *supra,* Plaintiff was hired as in Inside Sales Manager and was responsible for overseeing between 10 and 15 employees. DSOF¶5. During

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

the 19 months that he worked for WM he was responsible for "[p]articipat[ing] in training and coaching (sic) the Inside Sales staff." DSOF¶4. As a result of Plaintiff's lack of tact and diplomacy with others, Plaintiff's immediate supervisor had multiple frank conversations with Plaintiff to discuss his lack of performance and hostile interactions with others. DSOF¶¶26-36. These hostile interactions with others ultimately culminated in a road rage incident directed towards a subordinate employee. *Id.* In light of these ongoing performance issues, which ultimately led to his termination from employment, Plaintiff cannot establish that he was meeting legitimate performance expectations.

Plaintiff also failed to offer any admissible evidence that his replacement on the eBusiness team was due to his age, much less the heightened "but-for" causation required for an ADEA claim. Instead, the sum total of Plaintiff's alleged support for this claim consists of the following: (1) he believed he was the oldest manager in the building (but did not know for sure), (2) he believed no other manager was held to the same standards, and (3) he was replaced on the eBusiness Team by another worker who was significantly younger. DSOF¶53. However, Plaintiff's subjective beliefs, without more, are insufficient to overcome summary judgment. *Arpin,* 261 F.3d at 922. And Plaintiff's factually unsupported "beliefs" are actually provably false. Although Plaintiff claimed to "believe" that he was the "oldest manager in the building," he was not. Instead, his coworker Doug Gibbs (also an Inside Sales Manager whom Plaintiff claims was treated more favorably than him) was *two years older* than Plaintiff (DOB 05/04/1957).[8] DSOF¶56. Plaintiff also worked with Laurie Webb (whom Plaintiff also claims was treated more favorably than him). DSOF¶57. Although she is three years younger than Plaintiff, she is in his same protected class (over 40). *Id.* As for Plaintiff's assertion that no other manager was held to the same standards as him, such a claim actually hurts, not helps, his case. Following Plaintiff's logic, Mr. Gibbs who was two years older than him was actually treated **better** than him and "not held to the same standards." The same rationale would apply

---

[8] At deposition, Plaintiff testified that he wasn't sure if he was the oldest manager in the building and stated that "[t]he only one that could have been older than me was Doug. And I – I think I was older than Doug, but I'm not positive." DSOF¶54.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 40222704.1

for Ms. Webb. Finally, Plaintiff's statement that he was replaced on the eBusiness team by a younger worker does nothing to establish the requisite but-for causation required for an ADEA claim. Plaintiff has offered no facts in support of discriminatory animus based on age. As set forth in section III(C)(2), *supra*, Plaintiff was only moved off the eBusiness team so that WM could accommodate **his** request to work a "[c]onsistent schedule start time of 6 a.m."

Plaintiff has similarly failed to offer any factual support for his subjective belief that he was terminated because of his age. Notably, all Plaintiff had to say regarding his alleged discriminatory termination was that he *believes* he was terminated because of his age based on the following exchange with his *own counsel*:
> Q: Okay. Do you **believe** that you were discharged because of your age?
> A: Based on all of the factors that I recounted earlier, yes.

DSOF¶52 (emphasis added). This testimony is contrary to Plaintiff's earlier sworn testimony that his age discrimination claim was premised exclusively on his assertion that he was replaced on the eBusiness team. *Id.* At no time did Plaintiff provide "factors" earlier in his deposition regarding why he believed he had been terminated based on his age. *Id.* And Plaintiff has offered no facts in support of his allegation that he was somehow terminated "but-for" his age.[9] Plaintiff's subjective beliefs are insufficient to overcome summary judgment. *Arpin,* 261 F.3d at 922. In actuality, Plaintiff was terminated because he engaged in road rage towards a subordinate employee. As a result, Plaintiff's age discrimination claim fails.

Plaintiff's age discrimination claim further fails because WM had entirely legitimate and non-discriminatory reasons for its actions. As set forth above, Plaintiff was placed on the SnapShot team so that WM could accommodate Plaintiff's request to work a "[c]onsistent schedule start time of 6 a.m." DSOF¶¶10-12, 21-23. Plaintiff maintained the same job title, base salary, commission plan, and job responsibilities. DSOF¶24. Such an action by WM in granting an accommodation request clearly constitutes a legitimate and non-discriminatory reason for its actions. WM similarly had legitimate non-discriminatory reasons for terminating

---

[9] Plaintiff's coworker, Mr. Gibbs, was older than Plaintiff and held the same job title of Inside Sales Manager. DSOF¶56. Mr. Gibbs has remained employed with WM following Plaintiff's termination and has since been promoted within WM to Sr. Manager Inside Sales. *Id.*

FP 40222704.1

1  Plaintiff from employment following Plaintiff's history of hostile behavior towards others
2  including a road rage incident where Plaintiff admitted to encountering a subordinate employee
3  on the highway off-ramp and turning in front of her vehicle, "follow[ing] [her] vehicle into the
4  WM parking lot," "enter[ing] the building behind her," and speaking with her supervisor.
5  DSOF¶¶26-36. Hostile behavior towards other employees is a legitimate and non-discriminatory
6  reason for termination. *Raphael v. Tesoro Corp.*, 729 Fed. Appx. 566, 567 (9th Cir. 2018).

The same actor and same protected class inferences further rebut Plaintiff's claims of age discrimination. The Ninth Circuit has routinely held that "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace, & Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996). The Ninth Circuit later elaborated on its *Bradley* decision by explaining that its holding was based "on the principle that an employer's initial willingness to hire the employee-plaintiff is strong evidence that the employer is not biased against the protected class to which the employee belongs." *See Coghlan,* 413 F.3d at 1096.

Here, Plaintiff has asserted that Brad Cea and Dave Swedler—the very same individuals who personally interviewed and hired him at WM—are also guilty of discriminating against him on the basis of his age. DSOF¶1. Since Plaintiff was terminated from WM after working for WM for only 19 months, Plaintiff's argument defies logic. DSOF¶3. The evidence demonstrates that both Mr. Swedler and Mr. Cea both believed that Plaintiff was in his 50's prior to hiring him. DSOF¶¶1-2. Given that Mr. Cea and Mr. Swedler hired Plaintiff to work at WM knowing that he was in his 50's, it defies logic that they suddenly developed discriminatory animus toward the Plaintiff due to his age only nineteen months later. Accordingly, Plaintiff's allegations of age discrimination are completely without merit and WM is entitled to the inference that Mr. Cea and Mr. Swedler did not harbor any discriminatory animus when they made the decision to move Plaintiff to the SnapShot team or when they later terminated Plaintiff's employment.

An inference also exists that an employer will not discriminate against members of his or her own protected class. *See Oncale v. Sundowner Offshore Serv.*, 523 U.S. 75, 78

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1 (1998)(recognizing the inference). Here, Mr. Swedler whom Plaintiff contends discriminated
2 against him on account of his age was also over 40 years old at the time Plaintiff was
3 terminated. In fact, Mr. Swedler is only four years younger than Plaintiff. DSOF¶2.

4 Finally, Plaintiff cannot establish that any comparator employees were treated more
5 favorably than him. Here, Plaintiff has not and cannot identify any other Inside Sales Managers
6 who engaged in road rage towards a subordinate employee and was able to keep his or her job.
7 Although Plaintiff has summarily argued that he was terminated because of his age, WM has
8 offered evidence that another Inside Sales Manager who is three years older than Plaintiff,
9 reported to the same supervisor, and worked with Plaintiff (but was not accused of road rage)
10 remains employed with WM. DSOF¶56. In fact, this same employee has been promoted from
11 Inside Sales Manager to **Sr**. Inside Sales Manager. *Id.* Moreover, following Plaintiff's termination
12 for cause from WM, Plaintiff was replaced by Richard Younkins, who is 11 years younger than
13 Plaintiff, but is still within Plaintiff's own protected class (over 40). DSOF¶55. For these
14 additional reasons, Plaintiff's age discrimination claim fails.

15     **D.**     **Plaintiff Cannot Establish Entitlement to Punitive Damages.**

16 Finally, Plaintiff cannot establish an entitlement to punitive damages. For
17 employment discrimination claims, "punitive damages are limited … to cases in which the
18 employer has engaged in intentional discrimination and has done so 'with malice or with
19 reckless indifference to the federally protected rights of an aggrieved individual.'" *Kolstad*
20 *v. Am. Dental Ass'n*, 527 U.S. 526, 529–30 (1999). Here, Plaintiff's allegations come
21 nowhere close to supporting a finding of unlawful discrimination, let alone an award of
22 punitive damages. "Where there is no evidence that gives rise to an inference of actual
23 malice or conduct sufficiently outrageous to be deemed equivalent to ***actual malice***, the
24 trial court need not, and indeed should not, submit the issue of punitive damages to the
25 jury." *Id.* at 539.

26     **IV.**     **CONCLUSION**

27 Defendant respectfully requests the Court grant its Motion for Summary Judgment and
28 dismiss Plaintiff's claims for disability discrimination, retaliation, and age discrimination.

18

1 | DATED this 29th day of March 2021.

2 | FISHER & PHILLIPS LLP

3 | By s/ Shayna H. Balch
Shayna H. Balch
Alanna R. Brook
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
Attorneys for Defendant

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Michael R. Pruitt
Nathaniel J. Hill
Jackson White
40 North Center Street, Suite 200
Mesa, Arizona 85201
Attorneys for Plaintiff


 s/ Michelle C. Colwell

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 40222704.1