**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell A. Smith, ) | No. CV-19-01579-PHX-SPL |
| ) | |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| ) | |
| WM Corporate Services Incorporated, ) et al., ) | |
| ) | |
| Defendants. ) | |

    Before the Court are Plaintiff Russell A. Smith's Motion for Summary Judgment on Certain Affirmative Defenses and Motion Under Rule 37(c)(1) (Doc. 113), Plaintiff's Statement of Facts in Support of Plaintiff's Motion for Summary Judgement Concerning Certain Affirmative Defenses (Doc. 114), Defendant WM Corporate Services, Inc. ("WM")'s Notice of Motion and Motion for Summary Judgment (Doc. 118), and Defendant's Memorandum of Points and Authorities in Support of its Notice of Motion and Motion for Summary Judgment. (Doc. 119) The Motions have been fully briefed and are ready for consideration.[1] (Docs. 129, 130, 131, 132, 137, 138) For the following reasons, summary judgment will be granted in favor of Defendant WM on all claims.

    The Court has also received Defendant's Notice of Late Filing (Doc. 139) and construes it as a Motion for Extension, which it now grants. Defendant's Reply (Doc. 138)

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

is accepted as timely filed.

## I.   BACKGROUND[2]

### A. Factual Background

This case is based on an employment discrimination dispute. Plaintiff began as an employee of WM Corporate Services, Inc. ("WM") in Phoenix, Arizona in February 2014. (Docs. 114 at ¶1, 120 at ¶3) He was an inside sales manager, responsible for supervising a team of employees. (Docs. 114 at ¶2, 120 at ¶3–4) During his employment, Plaintiff underwent testing for obstructive sleep apnea ("OSA"), with which he was diagnosed in September 2014. (Doc. 114 at ¶¶7–8,14) During the period between February and September 2014, Plaintiff alleges he was disciplined for sleeping on the job. (Doc. 114 at ¶¶10,12–13) He informed his supervisor about his sleep problems and later his OSA diagnosis. (Doc. 114 at ¶10–11,14) Plaintiff's hours at WM changed over time. (Docs. 114 at ¶¶15–19, 120 at ¶¶8–10) Originally, he would arrive at work at 4:30 a.m. and leave at 1:00 p.m. or 1:30 p.m. (Docs. 114 at ¶¶15–16, 120 at ¶6) Plaintiff stated he was asked to work at 7:00 a.m. to 3:30 p.m., which did not work for his "internal clock." (Doc. 114 at ¶¶17–20) On May 20, 2015, Plaintiff submitted a request for accommodation to WM's human resources department to return to working the earlier hours. (Docs. 114 at ¶20, 120 at ¶10–12) He was not allowed to do so until the request had been reviewed. (Docs. 114 at ¶21, 120 at ¶14) WM supervisors told Plaintiff his accommodation request would be approved, and he could start work at 6:00 a.m., but he would have to switch teams within the company, from eBusiness to the SnapShot team. (Docs. 114 at ¶¶30–31, 120 at ¶21) He switched teams in July or August of 2015. (Docs. 114 at ¶¶30–31, 120 at ¶¶20–24) Plaintiff alleges another employee was allowed to remain on the eBusiness team while working "roughly the same hours" Plaintiff had requested —5:00 a.m. to 1:30 p.m. (Doc. 130 at ¶21)

Plaintiff was terminated on September 30, 2015. (Docs. 114 at ¶32, 120 at ¶36) The

---

[2] The following facts are undisputed unless otherwise noted.

2

parties dispute the cause. Plaintiff claims he was told his position was being eliminated and "[i]t's not working out." (Doc. 114 at ¶32) Defendant states he was terminated for cause after a "long history of unprofessional and hostile behavior towards other WM employees" that ended in a "road rage incident" between Plaintiff and another WM employee, Debbi James. (Doc. 120 at ¶¶32–36) The "long history" before the road rage incident allegedly included "bullying," making other employees cry, and multiple allegations of racism. (Doc. 120 at ¶¶28–31) Defendant alleges that on September 29, 2015 Plaintiff cut James off on the freeway, followed her into the WM parking lot, blocked her in a spot with his car, then followed her into the building she was entering. (Doc. 120 at ¶¶33–34) James allegedly felt "fearful" of Plaintiff. (Doc. 119 at 4) Defendant states after supervising employees discussed the incident, they decided to terminate Plaintiff's employment. (Doc. 120 at ¶¶35–36) Plaintiff disputes Defendant's account of the road rage incident and "admits only that he was involved in a driving incident." (Doc. 130 at ¶¶32–34) He states that James cut him off and he followed her into the parking lot and entered the building behind her but denies that he blocked her into a parking space with his car. (Doc. 130 at ¶¶32–34) He denies the other allegations and alleges that other employees engaged in the kind of behavior of which WM accuses him and states that they were not disciplined, unlike him. (Doc. 130 at ¶¶31)

After his termination, Plaintiff states he applied for other jobs from November 2015 to early 2019. (Doc. 114 at ¶37) He further states he was working as an Uber and Lyft driver from 2016 until he was hired by Arrowhead BMW, where he currently works in sales. (Doc. 114 at ¶38)

### B. Procedural Background

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination against WM on or around May 19, 2015. (Docs. 114 at ¶22, 120 at ¶37) The EEOC sent a copy of the charge to WM's Senior Employment Counsel. (Docs. 114 at ¶23, 120 at ¶38) The 2015 Charge included claims of disability discrimination and retaliation. (Docs. 114 at ¶22, 120 at ¶37) Plaintiff received his right to sue on August 16,

3

2015. (Doc. 120 at ¶38) Nothing happened after the right to sue letter; Plaintiff remained employed at WM until his termination in September of 2015. (Docs. 114 at ¶¶26–32, 120 at ¶40) Plaintiff then filed a second EEOC charge on February 16, 2016. (Docs. 114 at ¶35, 120 at ¶41) He received a right to sue on August 31, 2018. (Docs. 114 at ¶36, 120 at ¶41) Plaintiff filed his Complaint in Maricopa County Superior Court on November 21, 2018. (Doc. 1-1) The Complaint contains claims for (1) (a) disability discrimination and (b) failure to accommodate in violation of the Americans with Disabilities Act ("ADA"), (2) retaliation in violation of the ADA, and (3) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). (Doc. 1-1 at ¶¶71–95) WM removed the action to this Court on March 7, 2019 on federal question grounds under 28 U.S.C. § 1331. (Doc. 1 at 2) In its Answer filed April 1, 2019, WM asserted various affirmative defenses. (Doc. 14 at 12–13) There were no Motions to Dismiss filed. Plaintiff moved for summary judgment on the following affirmative defenses on March 29, 2021: failure to mitigate; failure to exhaust administrative remedies; after acquired evidence doctrine; and waiver, laches, estoppel and/or unclean hands. (Doc. 113 at 1) Alternatively, Plaintiff seeks dismissal of the defenses under Fed. R. Civ. P. ("Rule") 37(c)(1). (Doc. 113 at 1) Defendant moved for summary judgment on all counts on the same date. (Docs. 118–119)

## II.   LEGAL STANDARDS

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In other words, where different inferences can be drawn, summary judgment is inappropriate. *Boulder Oro Valley LLC v. Home Depot USA Inc.*, No. CV-17-

...

00453-TUC-DCB, 2019 WL 2106419, at *1 (D. Ariz. Mar. 26, 2019) (quoting *Sankovich v. Life Ins. Co. of North Am.*, 638 F.2d 136, 140 (9th Cir. 1981)).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant is able to do so, the burden then shifts to the non-movant who "must do more than simply show that there is some metaphysical doubt as to the material facts," and, instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). "In reviewing cross-motions for summary judgment, each motion must be considered on its own merits." *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 885 (9th Cir. 2019) (internal quotations omitted). When parties file cross-motions for summary judgment, the court must review each motion separately, giving the nonmoving party for each motion the benefit of all reasonable inferences. *Eat Right Foods Ltd. v. Whole Foods Mkt, Inc.*, 880 F.3d 1109, 1118 (9th Cir. 2018).

**B. Rule 37(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit**

Under Rule 37(c)(1), if a party fails to provide discovery as required by Rule 26(a) or (e), then the party is not allowed to use that information as evidence at trial. *See also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001). If a court finds a party did not satisfy its Rule 26 obligations, it can order the evidence excluded under Rule 37(c)(1). *See id.* at 1106.

**III.   DISCUSSION**

The Court will address the claims individually, discussing the affirmative defenses as they are relevant. The first affirmative defense to arise is the failure to exhaust

administrative remedies.

### A. Exhaustion and Timeliness

Persons seeking to file claims under the ADA and ADEA must first file a charge with the EEOC. *See generally Fort Bend County, Texas v. Davis*, 587 U.S. ___ (2019); *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994); *see also Sanchez v. Pac. Powder Co.*, 147 F.3d 1097, 1099 (9th Cir. 1998). The charge must be filed within 300 days of the allegedly unlawful conduct. *Shea v. City & Cty. of San Francisco*, 57 F. App'x 740, 741–42 (9th Cir. 2003) (citing 42 U.S.C. § 2000e–5(e)(1). After the EEOC reviews the charge and gives a claimant a right to sue letter, the claimant has 90 days to file a lawsuit. *See Edman v. Shell Oil Co.*, 104 F. App'x 629, 630 (9th Cir. 2004) (citing 42 U.S.C. § 2000e–5(f)(1); *Scholar v. Pacific Bell*, 963 F.2d 264, 267–68 (9th Cir. 1992); *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 383 (9th Cir. 1997)).

Once the plaintiff files the lawsuit, "[t]he claims in the plaintiff's complaint must match the allegations in the EEOC charge or must be 'like or reasonably related' to those allegations." *Zolfo v. Westminster Vill. Inc.*, No. CV-19-05645-PHX-SPL, 2020 WL 6290490, at *2 (D. Ariz. Oct. 27, 2020) (citing first *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002), *as amended* (Feb. 20, 2002) (internal quotations omitted); citing second *Josephs v. Pac. Bell*, 443 F.3d 1050, 1061–62 (9th Cir. 2006) (the ADA claims in the plaintiff's complaint must match the allegations in the EEOC charge or be "reasonably expected" to grow out of those allegations)). "Although the language of EEOC charges should be construed 'with utmost liberality since they are made by those unschooled in the technicalities of formal pleading,' the 'crucial element' of a discrimination charge 'is the factual statement contained therein.'" *Zolfo*, 2020 WL 6290490 at *2 (citing *B.K.B.*, 276 F.3d at 1100). If a complaint's allegations are not reasonably related to those in the plaintiff's EEOC charge, they fail for lack of administrative exhaustion.

Here, Plaintiff failed to file suit after his first EEOC charge and right to sue letter. *See supra* I.B. Defendant argues this failure should bar any claims arising from actions

included in the first EEOC charge. (Doc. 119 at 5) As Plaintiff argues, the Ninth Circuit has held that "the continuing violations doctrine . . . allows courts to consider conduct that would ordinarily be time barred as long as the untimely incidents represent an ongoing unlawful employment practice." *Morgan v. Nat'l R.R. Passenger Corp.*, 232 F.3d 1008, 1014 (9th Cir. 2000) (internal citations omitted). However, the Supreme Court limited that holding in *National R.R. Passenger Corp. v. Morgan.* 536 U.S. 101, 115 (2002). (the "continuing violations doctrine" only applies to hostile work environment claims, because "[t]heir very nature involves repeated conduct"). Thus, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 102; *see also Bird v. Dep't of Human Servs.*, 935 F.3d 738, 748 (9th Cir. 2019) (holding that, after the Supreme Court *Morgan* decision, "little remains of the continuing violations doctrine, [e]xcept for a limited exception for hostile work environment claims"). Thus, Plaintiff's allegations arising more than 300 days before the second EEOC claim was filed are barred as untimely and for failure to exhaust administrative remedies. Despite Plaintiff's arguments to the contrary, the Court will not look at the earlier allegations as evidence of discriminatory treatment under the continuing violations doctrine because Plaintiff did not include hostile work environment claims.

The second EEOC charge was filed February 16, 2016. (Docs. 114 at ¶35, 120 at ¶41) The 300-day window began April 22, 2015. Any allegations of discrimination prior to that window will not be considered.

To the extent Plaintiff argues Defendant failed to satisfy its disclosure obligations as to the failure to exhaust defense (Doc. 113 at 13–14), the Court finds the argument unavailing because any evidence required to establish this defense comes from Plaintiff's own filings, and because Plaintiff and Defendant both had copies of the EEOC charges. (Docs. 114-1 at 174–77, 120-3 at 22– 24)

**B. Disability Discrimination and Failure to Accommodate**

   *i.    Disability discrimination*

The ADA prohibits an employer from discriminating "against a qualified individual

7

on the basis of disability." 42 U.S.C. § 12112(a). "To withstand a motion for summary judgment on an ADA claim, a plaintiff must either provide sufficient direct evidence of an employer's discriminatory intent, or give rise to an inference of discrimination by satisfying the burden-shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Mickealson v. Cummins, Inc.*, 792 F. App'x 438, 440 (9th Cir. 2019) (internal citations omitted). "To establish a prima facie case for disability discrimination under the ADA, a plaintiff must show that: (1) he is disabled, (2) he is qualified to perform the essential functions of his position, and (3) he suffered an adverse employment action because of his disability." *Id.*

Defendant does not dispute that Plaintiff is disabled. (Doc. 119 at 6–7) Defendant claims Plaintiff is unqualified for the essential functions of the position and that he was not transferred or terminated because of his disability. (Doc. 119 at 7–9) The employer has the burden of establishing which job functions are essential as "much of the information which determines those essential functions lies uniquely with the employer." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quoting *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 991 (9th Cir. 2007)). To meet its burden a defendant employer "must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding" favorable to the defendant. *Samper*, 675 F.3d at 1237 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)). Such evidence includes but is not limited to the written job description, a declaration from a supervisor, other employee's work experience in the same position, or the "employer's judgement as to which functions are essential." *Samper*, 675 F.3d at 1238 (citing 29 C.F.R. § 1630.2(n)(3)).

Defendant contends that face-to-face interaction with subordinates and regular attendance were essential functions of Plaintiff's role. (Doc. 119 at 7) "His lack of qualification was based on his inability to provide adequate supervision and coverage for his team, which worked between the hours of 5 a.m. and 5 p.m." (Doc. 119 at 7) Defendant also states Plaintiff was unqualified "based on his repeated hostile interactions with

coworkers." (Doc. 119 at 7) Defendant provided the job description for Plaintiff's position and deposition testimony from Plaintiff's supervisors. (Docs. 120-1 at 13–14, 68–70, 72–80; 120-3 at 33–36)

The job description lists "Other Knowledge, Skills, or Abilities Required" under the requirements for an Inside Sales Manager as: "Build Relationships, Communicate with Impact, Demonstrate Adaptability, Demonstrate Integrity and Courage, Demonstrate Professionalism, Demonstrate Leadership/Coaching, Initiate Action, Produce Results, Think Strategically, Focus On Customers, Gain Commitment, Influence and Negotiate, Leverage Diversity, Manage Work/Time, Plan and Organize, [and] Use Ethical Practices." (Doc. 120-1 at 69–70) Plaintiff's supervisor, Brad Cea, testified that Plaintiff's subordinates came to him with concerns that "they weren't getting the support or coaching they needed." (Doc. 120-1 at 76:1–3) He also stated the manager assigned to a certain team "needed to have optimal coverage for the team." (Doc. 120-1 at 80:3–5) Brad Cea's supervisor, David Swedler, testified that "Rus Smith could [not] continue to be a manager representing the professionalism that we expected out of our managers" following the "road rage incident." (Doc. 120-3 at 36)

While Plaintiff has provided some evidence to refute the allegations that his employees were not receiving enough coaching from him, his attempts to cast doubt about what occurred during the "road rage incident" do not survive summary judgment. Whether Plaintiff cut off Debbi James or the other way around, it is undisputed that he followed her through the parking lot and into her building, where he did not work. (Docs. 120 at ¶¶32–36 130 at ¶¶32–34) Defendant also provided a written account of the incident from James in the form of an email to her supervisor in which she stated when Plaintiff followed her into her building she thought he was trying "to get [her] or get into the building." (Doc. 120-3 at 18) Plaintiff's arguments that Defendant's factual allegations are supported by inadmissible evidence (the Debbi James email) are unavailing because these arguments go only to the authentication of the email. (Doc. 129 at 13 n.5) It is well-established law that summary judgment movants may rely on evidence as long as it can be presented in its

9

admissible form at trial. *See, e.g.*, *Oram v. Linderman*, No. CV-12-02450-PHX-FJM, 2014 WL 2569123, at *4 (D. Ariz. June 9, 2014) (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.")). Witness testimony may be used at trial to authenticate evidence. Fed. R. Evid. 901(b)(1). Therefore, the email may be considered at the summary judgment stage. Furthermore, Defendant provided additional evidence from Dave Swedler, who testified at his deposition that "the incident alone was a terminable offense." (Doc. 120-3 at 39:13–14) The Court finds this evidence is sufficient to show Plaintiff did not behave in the manner required of him by company standards. Furthermore, Plaintiff's statements in his declaration about receiving training on "mak[ing] assessments of individuals' demographic information" as a former state trooper are irrelevant and unconvincing in this context. (Doc. 130-1 at 7–8¶¶31–34)

The Court finds Defendant's evidence is sufficient to support its allegations that Plaintiff was unqualified for his position and did not meet the company's standards set forth in the job description. (Docs. 120-1 at 68–70, 72–80; 120-3 at 33–36) He was expected to behave professionally at the workplace and build relationships with his team, and he failed to do so. (Doc. 120-1 at 69–70)

Because the Court finds there is no question of material fact as to whether Plaintiff was qualified for the position, the claim for disability discrimination cannot survive. Summary judgment will be granted on this claim in favor of Defendant WM.

  *ii.* *Failure to accommodate*

The ADA prohibits an employer from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity…" 42 U.S.C.A. § 12112(b)(5)(A). The elements of an ADA failure to accommodate claim are the same as the elements of an ADA discrimination claim. *See*

*E.E.O.C. v. Creative Networks, L.L.C.*, 912 F. Supp. 2d 828, 836–37 (D. Ariz. 2012) (citing *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (internal citations omitted)). "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Creative Networks*, 912 F. Supp. 2d at 837 (quoting *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) (internal citations omitted). This process requires the employer and employee to communicate and explore possible accommodations "in good faith." *Id.*

Defendant again argues Plaintiff was not a qualified individual. (Doc. 119 at 9) Having found no issues of material fact on the qualification issue, the Court will again grant summary judgment in favor of Defendant on the failure to accommodate claim. *See supra* III.B.i.

### C. Retaliation

The Ninth Circuit uses the Title VII retaliation framework for ADA retaliation claims. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000) (*en banc*) ("Therefore, we join our sister circuits in adopting the Title VII retaliation framework for ADA retaliation claims") *vacated on other grounds*, 535 U.S. 391 (2002). "Under the Title VII retaliation standard, a plaintiff must make out a prima facie case '(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two.'" *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (quoting *Emeldi v. Univ. of Ore.*, 673 F.3d 1218, 1223 (9th Cir. 2012)). "An adverse employment action must rise above a trivial harm and ordinarily, [a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Clark v. City of Tucson*, No. CV-14-02543-TUC-CKJ, 2020 WL 914524, at *9 (D. Ariz. Feb. 26, 2020), *appeal dismissed*, No. 20-15982, 2020 WL 4876338 (9th Cir. June 22, 2020), *and appeal dismissed*, No. 20-16430, 2020 WL 6269575 (9th Cir. Oct. 15, 2020) (internal citations

omitted). After an employee establishes a prima facie case of retaliation, "[t]he burden then shifts to the employer to provide a legitimate, nondiscriminatory (or nonretaliatory) reason for the adverse employment action. If the employer does so, then the burden shifts back to the employee to prove that the reason given by the employer was pretextual." *Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014) (internal citations omitted).

Plaintiff's Complaint states Defendant retaliated against him for "seeking his rights under the ADA" by "(1) disciplining Plaintiff inconsistent with Company policy; (2) changing his work schedule; (3) moving Plaintiff to a less prestigious, tenuous position; an (4) terminating Plaintiff's employment." (Doc. 1-3 at ¶84) Defendant argues Plaintiff's reasons one and two arose before the 300-day window before the second EEOC complaint, and thus they are time-barred. (Doc. 119 at 13) Defendant further argues the move to a different team was not an adverse employment action, and that the termination was for "entirely legitimate and non-retaliatory reasons" after the "road rage incident." (Doc. 119 at 14)

It is undisputed that Plaintiff's alleged protected activity was requesting an accommodation to work different hours and filing an EEOC complaint. (Docs. 129 at 10-11, 138 at 9) Turning to the alleged retaliatory behavior, the Court found the allegations regarding the disciplinary actions and the change in work schedule are time-barred and will not discuss them further. *See supra* III.A. Turning to the third reason, Plaintiff's transfer to a different team, the Court notes lateral transfers may constitute adverse employment actions, but "that characterization is generally reserved for those transfers that tangibly affect an employee's benefits, wages, or career prospects." *Clark*, 2020 WL 914524 at *11 (citing *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000)). Transfer also may be an adverse employment action if it results in a "significant change in Plaintiff's job duties and a material change in the terms and conditions of a person's employment." *Clark*, 2020 WL 914524 at *12 (citing *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000) and *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)). The ultimate test is whether the action "is reasonably likely to deter employees from engaging

in protected activity." *Ray*, 217 F.3d at 1243.

Plaintiff responds to Defendant's arguments, conceding that the transfer to the SnapShot team did not change his (1) job title; (2) base compensation; (3) commission plan; and (4) work location. (Doc. 129 at 8) He argued he lost "prestige, visibility, and exposure at WM." (Doc. 129 at 8) Plaintiff also stated it was likely he would make less commission on the SnapShot team and that his job security was lessened. (Doc. 129 at 8) Loss of wages is a material change to employment conditions. *See Clark*, 2020 WL 914524 at *11. However, even viewing the facts in the light most favorable to Plaintiff, he has failed to allege anything that would allow the Court to find that he was facing a loss of commission.

Plaintiff testified at his deposition that he believed he would lose commission because he made more commission in his role on the eBusiness team than the equivalent manager on the SnapShot team. (Doc. 130-1 at 178:3–12) He testified that because he previously made more in commission than any other manager while on the eBusiness team, he believed there was the possibility of lower commission when he transferred. (Doc. 130-1 at 178:13–15) He also testified it was possible he could make the same commission, though that "was yet to be seen." (Doc. 130-1 at 178:14–16) Speculation by the nonmovant is insufficient to defeat summary judgment. *See Risby v. Nielsen*, 768 F. App'x 607, 611 (9th Cir. 2019), *cert. denied sub nom. Risby v. Wolf*, 140 S. Ct. 1296 (2020) (citing *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("Mere allegation and speculation do not create a factual dispute for purposes of summary judgment.")). Plaintiff's allegations as to his loss of job security are conclusory and speculative, too, and cannot withstand summary judgment. *Id.* As for Plaintiff's allegations of loss of "prestige, visibility, and exposure," Plaintiff cites no law and the Court finds no ninth Circuit precedent showing that loss of any of those three things is a material change to employment conditions.

Therefore, the Court finds the transfer was not an adverse employment action for purposes of an ADA claim for retaliation.

Now the Court examines the fourth allegedly retaliatory action, Plaintiff's

termination. Termination is decidedly an adverse employment action. *Clark*, 2020 WL 914524 at *9. As to the causation prong, Defendant repeatedly alleges the termination was for-cause "following a history of misconduct and hostile behavior towards other WM employees" and culminating in the "road rage incident." (Docs. 119 at 3, 138 at 10) Plaintiff alleges this reason was pretextual and the temporal proximity of the dismissal of the first EEOC charge and the termination shows that. (Doc. 129 at 11) Plaintiff further argues he was not told the termination was for cause, and believed his position was being dissolved, and that pretext can be shown when an employer "has given shifting or changing reasons." (Doc. 129 at 11) One of Plaintiff's supervisors testified that he told Plaintiff at the time of termination "it's not working out." (Doc. 130-1 at 138:2) The supervisor further testified that he gave Plaintiff no other reason for termination (that he could recall). (Doc. 130-1 at 138:7–15) Plaintiff also reasserts his arguments that Defendant's portrayal of the road rage incident and his other workplace behavior is inaccurate. (Doc. 129 at 10)

Although temporal proximity alone may be enough to show pretext, when the evidence shows there was a legitimate reason for the adverse employment action, courts can make no causal inference. *See Curley*, 772 F.3d at *633–34 (termination of plaintiff within two months of protected activity was found to be evidence of pretext but plaintiff's misconduct at work defeated the causal inference) (citing *Hashimoto v. Dalton*, 118 F.3d 671, 680–81 (9th Cir. 1997) (holding that, although "the timing of the[ ] events suffice[d] to establish a minimal prima facie case of retaliation, it d[id] nothing to refute" the employer's stated legitimate reasons for disciplining the plaintiff)); *see also Phillips v. PacifiCorp*, 304 F. App'x 527, 529–30 (9th Cir. 2008) (plaintiff was placed on a performance improvement plan shortly after filing a discrimination complaint, but evidence of poor work performance was a legitimate reason for the adverse action).

Although Plaintiff disputes James' account of the road rage incident, the Court previously found his arguments were insufficient to overcome summary judgment, and that the established facts show he behaved unprofessionally, which provided grounds for termination. *See supra* III.B.i. The Court finds the termination was not causally linked to

Plaintiff's protected activities because there was an intervening event.

The Court will therefore grant summary judgment in favor of Defendant on this claim.

### D. Age Discrimination

Under the ADEA, a plaintiff must show the following to establish an age discrimination claim: (1) he was at least forty years old; (2) he was performing the job satisfactorily; (3) he was discharged; and (4) the circumstances of the discharge give rise to an inference of age discrimination. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207-08 (9th Cir. 2008).

It is not disputed that Plaintiff was more than forty years old at the time of the events leading up to the case. (Doc. 119 at 14) It is also not disputed that he was discharged. (Docs. 114 at ¶32, 120 at ¶36) However, the Court previously found the termination could be justified for a non-discriminatory reason, which was Plaintiff's behavior toward another employee. *See supra* III.B.i., III.C. Therefore, there can be no inference of discrimination. The Court will grant summary judgment in favor of Defendant on this claim.

### E. Remaining Affirmative Defenses

The Court now turns to the remaining affirmative defenses on which Plaintiff moves for summary judgment. The failure to mitigate, after-acquired evidence doctrine, waiver, laches, estoppel, and unclean hands defenses are now moot due to the Court finding no issues of material fact or law on all claims. *See Guanzon v. Vixxo Corp.*, No. CV-17-01157-PHX-DWL, 2020 WL 619695, at *8 (D. Ariz. Feb. 10, 2020). Therefore, the remainder of Plaintiff's motion for summary judgment will be denied, too. The Rule 37(c)(1) arguments are also moot, for the same reason.

### IV. CONCLUSION

In reviewing the record, motions, and responsive briefings, the Court has found no issues of material fact or law on any of Plaintiff's claims. The Court found Defendant WM met its burden of proof on each claim. The Court further found Plaintiff Russell A. Smith's motion is moot as to most of the affirmative defenses and found in favor of Defendant on

the non-moot defense.

Therefore,

**IT IS ORDERED** that Defendant WM Corporate Services Incorporated's Notice of Late Filing (Doc. 139), construed as a Motion for Extension, is **granted**.

**IT IS FURTHER ORDERED** that Defendant WM Corporate Services Incorporated's Reply in Support of Its Motion for Summary Judgment (Doc. 138) is **deemed timely filed**.

**IT IS FURTHER ORDERED** that Plaintiff Russell A. Smith's Motion for Summary Judgment on Certain Affirmative Defenses and Motion Under Rule 37(c)(1) (Doc. 113) is **denied**.

**IT IS FURTHER ORDERED** that Defendant WM Corporate Services Incorporated's Motion for Summary Judgment (Doc. 118) is **granted**.

**IT IS FURTHER ORDERED** that this case is **dismissed** in its entirety and the Clerk of Court shall enter judgment accordingly.

Dated this 8th day of June, 2021.

Honorable Steven P. Logan
United States District Judge